1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KELLY DENISE CLAYTON,

11              Plaintiff,                    No. CIV 09-2282 EFB

12        vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
14
                Defendant.              <u>ORDER</u>
15   _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying her application for Supplemental Security Income ("SSI") under

18   Titles II and XVI of the Social Security Act.  For the reasons discussed below, the court grants

19   plaintiff's motion for summary judgment and denies defendant's motion for summary judgment,

20   and remands the case for further proceedings.

21   I.  <u>BACKGROUND</u>

22        Plaintiff, born May 3, 1961, formally applied for SSI on June 28, 2004.  Administrative

23   Record ("AR") at 65.  Plaintiff alleged that she had been disabled since June 1, 2000.  *Id.* at 65.

24   Her application was denied initially and upon reconsideration, and plaintiff requested an

25   administrative hearing.  *Id.* at 45-55.  On December 10, 2007, a hearing was held before

26   administrative law judge ("ALJ") James M. Mitchell.  *Id.* at 576-612.  Plaintiff was represented

1

by counsel at the hearing, and testified at the hearing, along with vocational expert David

Dettmer. *Id.*

The ALJ issued a decision on March 26, 2008, finding that plaintiff was not disabled.[1]

*Id.* at 14-25.  The ALJ made the following specific findings:

> 1.  The claimant has not engaged in substantial gainful activity since June 28, 2004, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

> 2.  The claimant has the following severe impairments: back impairment, right shoulder and thumb impairment, peripheral neuropathy and obesity (20 CFR 416.920(c)).

> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

perform light work as defined in 20 CFR 416.967(b) as follows: lift/push/pull 20 pounds occasionally and 10 pounds frequently; frequently walk/stand; occasionally sit/stoop/bend; slightly limited attention/concentration and understanding/memory; hearing is diminished but correctable; reaching overhead and to the front with the right, non-dominant hand is moderately limited (less than 3 hours per shift); gross manipulation is moderately limited on the right, non-dominant side; slightly limited ability to do simple routine repetitive tasks (pace and persistence); limitations due to asthma, requiring medications three times a day or less; requires only occasional supervision; and has slight-moderate pain requiring only occasional medication.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on May 3, 1961 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 28, 2004, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 19-25.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 13. However, on June 24, 2009, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security." *Id.* at 6-8.

II. <u>ISSUES PRESENTED</u>

Plaintiff contends that the ALJ erred by (1) failing to apply a mandatory special method to evaluate plaintiff's mental impairment and failing to make a finding as to the severity of the mental impairment and (2) discrediting more recent opinions from medical providers and relying on outdated functional assessments from nonexamining state agency medical providers. Dckt.

1    No. 21 at 9, 13.

2    III.  STANDARD OF REVIEW

3          The ALJ's decision denying benefits "will be disturbed only if that decision is not

4    supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d

5    599, 601 (9th Cir. 1999); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.

6    1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

7          The findings of the Commissioner as to any fact, if supported by substantial evidence, are

8    conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  The Court may not

9    substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir.

10   1996).  Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee*

11   *v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind

12   might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401

13   (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

14         "The ALJ is responsible for determining credibility, resolving conflicts in medical

15   testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

16   2001) (citations omitted). "Where the evidence is susceptible to more than one rational

17   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

18   *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

19   IV.  ANALYSIS

20         The ALJ's decision made no finding on the severity of plaintiff's claimed mental

21   impairments.  Thus, plaintiff claims that the ALJ failed to properly assess her mental impairment

22   at step two of the evaluation process as required by 20 C.F.R. § 416.920a.  Dckt. No. 21 at 9-13.

23   The court agrees.

24         The evaluation at the second step is a de minimis test intended to weed out the most

25   minor impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *Edlund*, 253 F.3d at

26   1158 (stating step two inquiry is de minimis screening device to dispose of groundless claims).

                                                     4

An impairment is not severe if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

A mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a [plaintiff's] statement of symptoms." 20 C.F.R. § 416.908.  Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the Social Security Administration has supplemented the five-step sequential evaluation process with additional regulations to assist the ALJ in determining the severity of mental impairments at steps two and three.  *Maier v. Comm'r of Soc. Sec.*, 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam) (citing 20 C.F.R. § 416.920a).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the claimant's ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation.[2]  *Id.* §§ 404.1520a(c)(2)-(4), 416.920a(c)(2)-(4).  Third, after rating the degree of functional loss, the ALJ must determine whether the claimant has a severe mental impairment.  *Id.* §§ 404.1520a(d)(2), 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including a specific finding as to the

---

[2] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.  20 C.F.R. Part 404, subpt. P, app. 1, § 12.00(C)(4).

1  degree of limitation as to each of the functional areas described in §§ 404.1520a(c)(3) and

2  416.920a(c)(3).  *Id.* §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

3        The first three of the four areas of function (activities of daily living; social function; and

4  concentration, persistence, or pace) are rated on a five-point scale: (1) none, (2) mild, (3)

5  moderate, (4) marked, and (5) extreme.  The degree of limitation in the fourth area of function

6  (episodes of decompensation) is rated on a four-point scale:  (1) none, (2) one or two, (3) three,

7  and (4) four or more. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4).  If the degrees of limitations in the

8  first three functional areas are rated as "none" or "mild" and the fourth functional area is rated as

9  "none," then it will typically be concluded that the impairment is not severe.

10  *Id.* §§ 404.1520(a)(d)(1), 416.920a(d)(1).

11        One of the stated purposes for the "special technique" is to help the Social Security

12  Administration organize and present its findings in a clear, concise, and consistent manner.  20

13  C.F.R. § 404.1520a(a)(3).  In 2000, the Ninth Circuit held that an ALJ's failure to follow the

14  procedures for evaluating mental impairment according to a former version of § 404.1520a

15  required remand where the claimant had a "colorable claim of mental impairment." *Gutierrez v.*

16  *Apfel*, 199 F.3d 1048, 1050-51 (9th Cir. 2000), superceded by regulation as stated in *Selassie v.*

17  *Barnhart*, 203 Fed. App'x. 174 (9th Cir. 2006) (not selected for publication).[3] *See also*

18  *Gunderson v. Astrue*, 371 Fed. App'x. 807, 808 n.1 (9th Cir. 2010) ("Although *Gutierrez* dealt

19

20      [3] A prior version of § 404.1520a required ALJs addressing mental impairments to attach to their decision a completed Psychiatric Review Technique Form. *Gutierrez*, 199 F.3d at 1049-1050. Amendments to the Social Security regulations since *Gutierrez* have given the ALJ greater discretion in deciding how to publish the mandated findings, but even the amended version requires the ALJ to follow the "special technique," "document application of the technique in the decision," and include specific findings "as to the degree of limitation in each of the functional areas." 20 C.F.R. § 416.920a(e). In an unpublished decision in 2006, the Ninth Circuit reaffirmed its holding in *Gutierrez* as it applies to the current version of § 404.1520a. *Selassie v. Barnhart*, 203 Fed.Appx. 174, 176 (9th Cir. 2006). *Selassie* held that remand for proper evaluation and documentation of mental impairment was required because, "[O]ne of the stated purposes for the special technique is to help the Social Security Administration organize and present its findings in a clear, concise, and consistent manner. The specific documentation requirements, therefore, are not mere technicalities that can be ignored as long as the ALJ reached the same result that it would have if it had followed those requirements." *Id.* at 176-77 (citation omitted).

1   with the prior version of section 404.1520a, the current version, although different, imposes

2   similar obligations on the ALJ."); *Kohler v. Astrue*, 546 F.3d 260, 266-69 (2d Cir. 2008)

3   (remanding claim for SSI and Disability Insurance Benefits where ALJ's decision denying

4   benefits did not reflect application of the special technique required by current version of

5   § 404.1520a) (*discussing Gutierrez*, 199 F.3d at 1051).  A colorable claim is one which is not

6   "wholly insubstantial, immaterial, or frivolous." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir.

7   1987).

8       Here, plaintiff has a colorable claim of mental impairment.  In addition to listing "mental

9   problems" on her Disability Report, she also wrote, in response to a question regarding her

10   feelings, "I'm very worried about myself, the future doesn't really look very good.  So I am

11   deppressed [sic] a lot." AR 73, 111.  Plaintiff presented evidence from medical professionals

12   who found that she had a mental impairment.  In October of 2004, Dr. Sullivan, a psychologist,

13   examined plaintiff and administered several psychiatric tests. AR 139-147.  On the Zung Self

14   Rating Depression Scale plaintiff's score indicated she suffered from moderate to marked

15   depression.  AR 146.  On the Depression Adjective Checklist test plaintiff's score indicated she

16   experienced feelings consistent with significant depression. *Id.* Plaintiff's score on the Beck

17   Depression Inventory indicated the presence of mild depression.  *Id.*  Plaintiff's score on the

18   Beck Anxiety Inventory indicated that she was "mildly anxious."  *Id.*  Ultimately, Dr. Sullivan

19   diagnosed plaintiff with undifferentiated somatoform disorder and personality disorder not

20   otherwise specified.  AR 146.

21       In January of 2005, Dr. Stone, plaintiff's primary care physician from January 2002 to

22   February 2005, submitted a summary statement explaining plaintiff's medical condition.  AR

23   165.  Dr. Stone stated that plaintiff suffered from "[s]ituational [a]nxiety that leaves her easily

24   overwhelmed."  *Id.*

25       In April of 2007, plaintiff was evaluated by Charles J. Wood, a licensed clinical social

26   worker, at the San Joaquin County Behavioral Health Services Crisis Center.  Her "mood/affect"

7

1   was described as "dysphoric" and she was ultimately diagnosed with "depression/anxiety NOS"

2   and personality disorder not otherwise specified.  AR 550.

3          In June of 2007, Dr. Kalman, a medical doctor and doctor of psychology, interviewed

4   and examined plaintiff.  He also reviewed plaintiff's medical records from Dr. Sullivan and Dr.

5   Stone.  Dr. Kalman found that plaintiff's affect was "labile" and her mood was "anxious,

6   depressed, irritable." AR 531.  He diagnosed plaintiff with bipolar disorder and depression.  Dr.

7   Kalman also completed the Medical Source Statement Concerning the Nature and Severity of an

8   Individual's Mental Impairment Form in which he indicated that plaintiff's understanding and

9   memory was mildly to moderately limited, sustained concentration and persistence was mildly to

10  moderately limited, social interaction was mildly to moderately limited, and adaptation was not

11  significantly to mildly limited. AR 535-537.

12         These objective medical findings constitute evidence to support a colorable claim that

13  plaintiff suffered from mental health impairments.  *See* 20 C.F.R. § 416.927(a)(2) ("Medical

14  opinions . . . that reflect judgments about the nature and severity of [plaintiff's] impairment(s),

15  including symptoms, diagnosis and prognosis," are evidence that a plaintiff may submit in

16  support of his disability claim).  Whether they do was never determined.  The ALJ not only

17  failed to apply the "special technique" described in 20 C.F.R. § 416.920a, but also failed to state

18  a conclusion regarding plaintiff's mental impairment.  He did not address plaintiff's mental

19  impairments at the "severe impairment" step of his analysis.  *See* AR at 19.  The ALJ's residual

20  functional capacity assessment includes limitations that might have been a product of mental

21  impairments–"slightly limited attention/ concentration and understanding/memory . . . [and]

22  slightly limited ability to do simple routine repetitive tasks (pace and persistence)."  *Id.* at 19.

23         But, as noted above, the ALJ's decision must show the functional limitations that were

24  considered in reaching a conclusion about the severity of a mental impairment.  There was no

25  such analysis recorded here, nor does it appear that such analysis was performed.  For example,

26  in the first step of the "special technique," the ALJ is to consider the medical evidence of the

mental impairment.  Here, the ALJ's decision did summarize the plaintiff's mental health diagnoses, but failed to mention plaintiff's diagnosis and treatment by the San Joaquin County Behavioral Health Services Center.  Additionally, in the second step of the special technique, the ALJ is to rate the plaintiff's functional limitation in the four specific categories.  The ALJ's decision did allude to one of the four areas of function in summarizing Dr. Rethinger's report, but merely discussed that doctor's opinion rather than independently rating the functional limitation.  *See* AR 23  ("[the report] found that the claimant had somatoform, personality and substance addiction disorders but that these were not severe.  This caused the claimant mild functional limitations and she had never had an episode of decompensation").  The ALJ did not mention the remaining functional areas or rate the degree of functional limitation resulting from mental impairment.  Nor did the ALJ complete step three of the mandatory special technique, determining whether the mental impairment is severe.

It is undisputed that the ALJ failed to follow the required procedure.  Dckt. No. 22 at 10 ("The ALJ did not provide a specific discussion of Plaintiff's limitations in these [four functional] areas").  The record showed that plaintiff had a colorable claim of mental impairment, as it contained multiple assessments and diagnoses of plaintiff's mental impairments.  The ALJ erred by not completing the special technique and documenting the results in his decision.

The Commissioner argues that any error by the ALJ is harmless, because as "the ALJ found that Plaintiff had other severe impairments, the ALJ considered the effect of all Plaintiff's impairments, severe and non-severe, on her residual functional capacity."  Dckt. 22 at 9-10.  It is true that in certain circumstances, the failure to explicitly use the special technique may constitute harmless error.  *See Gunderson*, 371 Fed. App'x. at 808-09 (unpublished decision acknowledging that failure to follow the special technique might sometimes constitute harmless error, but remanding in a case where it was not clear whether the ALJ would have arrived at the same conclusion regarding the plaintiff's RFC had he followed the special technique).  But here,

ord

1   the ALJ failed to thoroughly discuss the mental impairment evidence, as he did not even

2   acknowledge the existence of some of the medical records.  While the court makes no finding

3   regarding the severity of plaintiff's mental impairment, it has no confidence that the ALJ would

4   have reached the same result had he applied the special technique.  From the current record,

5   there is simply now way to know.  Therefore, the ALJ's decision must be reversed and remanded

6   for proper evaluation and documentation of plaintiff's mental impairments.

7   V. <u>CONCLUSION</u>

8        The ALJ failed to use the required special technique to evaluate plaintiff's claim of

9   disabling mental impairments.  The court finds that his failure to do so was not harmless, and

10   therefore his decision is not supported by substantial evidence.  As the case must be remanded

11   on these grounds, the court does not address plaintiff's other arguments.  Accordingly, it is

12   hereby ORDERED that:

13       1. Plaintiff's motion for summary judgment is granted;

14       2. The Commissioner's cross-motion for summary judgment is denied;

15       3. The Clerk is directed to enter judgment in the plaintiff's favor; and

16       4. The case is remanded for further proceedings consistent with this opinion.

17   DATED: March 16, 2011.

18

19       EDMUND F. BRENNAN
        UNITED STATES MAGISTRATE JUDGE